# Lessee of James Rodgers *against* John Gibson, Thomas R. Gregg, and Joshua Gibson, jun.

A judgment creditor is not considered as a purchaser or mortgagee, within the words of the recording act of 18th March 1775.

Sheriff cannot sell more lands than have been levied upon.

The inquisition cannot enlarge the levy, as returned.

EJECTMENT of one fourth part of Youghiogeny Forge, and 150¼ acres of land, about three quarters of a mile below Connelsville.

It appeared in evidence, that John Gibson was originally seised of the lands in question, and conveyed one moiety thereof to George Lamb, his brother in law; the one fourth part of the whole to his use absolutely; and the other fourth in trust for his father, Thomas Gibson, and a deed was accordingly executed by the said George to the said Thomas, dated 12th June 1797.

The plaintiff claimed the premises under a sheriff's sale, founded on two judgments against the said George Lamb, the one entered up 17th July 1798, and the other obtained in September term following.

*[112]  *Defence was taken by James Lea, (who also married a daughter of Thomas Gibson) under a deed from Lamb and wife to him, dated 18th June 1798, in consideration of 1000l. It was acknowledged on the 13th March 1799, and recorded on the 22d May 1800.

A question arose, whether this conveyance being unrecorded near two years after its execution, must not be postponed to the judgments rendered against Lamb in the intermediate time; or in other words, whether a judgment creditor should not be considered as a purchaser or mortgagee, within the words or spirit of the act of 18th March 1775, entitled, "a supplement to the "act, entitled an act for acknowledging and recording of deeds?" 1 St. Laws 713.

The court after argument declared, that it was not within their knowledge that this point had been decided since the passing of the law of 1775. The true construction of the legislature's meaning must necessarily be collected from their own words. The preamble recites, that "by means of the different "and secret ways of conveying lands, tenements, and heredita- "ments, divers persons may be injured in their purchases and "mortgages by prior and secret conveyances, and fraudulent "incumbrances," &c. It then enacts, that "all deeds and con- "veyances concerning lands shall be recorded in the office for "recording of deeds, in the county where such lands lie, within "six months after the execution of such deeds or conveyances; "and that every such deed and conveyance which shall not be "so recorded, shall be adjudged fraudulent and void against "any subsequent purchaser or mortgagee for valuable considera- "tion, unless such deed or conveyance be recorded as aforesaid, "before the proving and recording of the deed or conveyance, "under which such subsequent purchaser or mortgagee shall "claim."

It is evident, that neither the expressions of the preamble, enacting clause, or exception, embrace the case of a judgment creditor. 2 Wms. 491. But it has been contended, that judgments and mortgages are classed as incumbrances, and bear a

[Rodgers' Lessee *v.* Gibson et al.]

considerable analogy; the former bind all the lands of the debtor, the latter only those comprised in the deed; but both are subject to the mischiefs of secret conveyances. This is true, but a clear distinction rests in this; that the valuable consideration given or advanced on a mortgage, is parted with on the security of the mortgaged premises, but a person is often trusted as well on the security of his person and effects, as of his lands; and this may afford a solid ground for the words used in the law. 1 Wms. 279. 2 Ves. 662. The evils intended to be guarded against, seem to be, that purchasers of mortgages or real property *should not be affected by prior deeds for the same lands, unrecorded within the stipulated periods; because they expend or advance their money, on finding that there exists no prior incumbrance on record on the property. [*113

If the legislature meant to extend the provision to judgment creditors, would they not have used apt words indicative? As the case appears to the court, they are of opinion, that the recording act of 1775 cannot influence the decision of the present question.

Many circumstances have been relied upon by the plaintiff's counsel to shew that if the transaction between Lamb and Lea, as to this deed, was not fraudulent, yet being taken by the wife of Lea, in his absence, without proper authority to secure a pre-existing debt, it amounted only to a proposition to sell for a given price; and therefore it became necessary to shew the assent of Lea thereto, in a reasonable time. They have insisted, that Lea should unequivocally have shewn, that he had given Lamb credit for the 1000l. consideration money absolutely, immediately on being informed of the transactions: that if Lamb was bound by his conveyance, so also should Lea be bound; and that he could not make the same valid or invalid at his pleasure, by his assent or dissent, at the expiration of several months, to the injury of honest creditors, whose liens would have attached to the lands, in case the interest of Lamb was not divested. The acts of Lamb, at and immediately before and after the execution of the deed, and his letter to Lea accompanying the same, evidently shew that the interest of the former in the lands was considered as still subsisting.

On the other hand, it has been contended by the defendant's counsel, that there is not the smallest suspicion of fraud between Lea and Lamb, though nearly connected by marriage, the most explicit proof having been given of a large debt being due by the latter to the former. That Mrs. Lea came up from the state of Delaware, distant between 200 and 300 miles, by her husband's directions, with the account and a letter demanding payment, and from the nature of the thing she must necessarily have been impowered to take any proper measures for the security of the debt. That her acceptance of the deed involved in it his assent thereto, and at least was binding upon him until

[Rodgers' Lessee v. Gibson et al.]

he gave some equivocal proof of his dissent thereto. That Lea's taking possession of the one fourth of the forge on the 15th October 1798, under the terms of covenant in the conveyance, was conclusive evidence of his assent; which was still more strongly confirmed by Lea's taking no steps to recover his large debt against Lamb, though he actually proceeded in the Circuit Court *114] *of the United States for the district of Pennsylvania, against John and George Lamb for their company debt.

The court declared, that all these circumstances should be taken into view by the jury, and duly contrasted, so as to enable them to form a dispassionate judgment on the whole. The non-production of all the family letters, on the subject of the supposed sale, added to the doubts which naturally arose in the case. The letter from Lamb to Lea, dated 7th June 1798, contains strong expressions. He offers his lands at his own price, and tells him that his brother in law, Nathaniel Gibson, had offered to buy the one fourth of the forge at 1200l., but had no money. He subjoins this postscript: " I have concluded to " make a short deed, and forward it by sister Eliza, for the one " fourth of Yough Forge; and have stated to her, that if I can " raise the money this fall, I will do it, as she says thee will pre- " fer it." The answer hereto has not been shewn; but a brother in law who saw it, has declared, that Lea wrote to Lamb a short time after, and he therein said he wanted money and not property; and it is worthy of observation, that though he directed possession of the forge to be taken on the 15th October, he did not obtain an acknowledgment of the deed until the 13th March 1799, nor record it until the 22d May 1800. On the whole matter, the jury will judge for themselves.

On both writs of fieri facias the sheriff has returned "levied " on one fourth part of Yough Forge." The inquisition condemning the lands is contended to be explanatory. But it cannot possibly enlarge the sheriff's levy, as returned. It only says, however, that the land and appurtenances levied on are not sufficient to pay the debts and costs within seven years beyond all reprizes. These words may be well satisfied, consistently with the plain meaning of the return. The sheriff cannot possibly sell more land than he has levied on, and should the jury be of opinion with the plaintiff on the true meaning of the contracting parties to the deed, their verdict ought to be confined to one undivided fourth part of the forge.

The jury staid out all night, and on the next morning returned a verdict for the plaintiff for one undivided fourth part of Yough forge, and for the defendants as to the residue of the lands.

Messrs. J. Woods, Campbell, Meason and Morrison, pro quer.

Messrs. Ross, Addison, Lyon and Kennedy, pro def.

Cited in 2 Binn. 46 to show that a judgment creditor is not a purchaser or mortgagee within the meaning of the act of March 18, 1775; but that a purchaser at sheriff's sale under the judgment is. Cited for the same purpose in 17 S. & R. 71 1 Pa. 494; 9 Pa. 95; 45 Pa. 176; 9 W. N. C. 167.
Distinguished in 70 Pa. 82.