The opinion of the court was delivered by
Tilghman, C. J.
A house and lot in the city of Philadelphia, which had been mortgaged by the defendant to the plaintiff, was sold by the sheriff, by virtue of a levari facias on the mortgage. Part of the money, proceeding from the sale, has been .brought into court, and is claimed by four different persons, viz: 1st, By Charles J. Ingersoll, attorney of the United States, who has filed a suggestion setting forth the right of the United States. 2d, By Hannah Wilcocks the plaintiff 3d, By the general assignee of William Waln, the defendant, for the benefit, of his creditors. 4th, By the executors of William Chancellor, deceased, a judgment creditor of the defendant.
The date, of Chancellor’s judgment is the 1st April, 1818. The date of the defendant’s mortgage to the plaintiff, is the 18th May, 1819. The date of the defendant’s general assignment, is the 24th November, 1819. The United States obtained three judgments against the defendant on the 16th August, 1819, and one on the 15th November, 1819, all on custom house bonds, for duties on goods imported into the United States. At first view, the case appears intricate, and it certainly is of a singular nature. But when it is analyzed, and the several claims compared with each other, the solution is not difficult.
We will begin with the United States. When their claim is compared with Chancellor’s (the judgment creditor,) they have the advantage, because Chancellor had laid no execution on the premises, at the date of the defendant’s assignment in trust for his creditors. According to the law of the United Stales, therefore, the judgment, though prior in date, must give way to the United States, who were entitled to a preference to all judgments not executed at the date of the general assignment. But when the claim of the United States is contrasted with the mortgage, it must yield, because the mortgage bears date before the general assignment, at *381 the execution of which, and not before the preference of the United States begin. To prove this, I will refer to the acts of congress of the 3d March, 1797, and 2d March, 1799, on which the claim of preference is founded; and to the decisions in the Courts of the United States, which have fixed the construction of these acts. The acts provide, “that in all cases of insolvency, or where any estate in the hands of executors, administrators, or assignees, shall be insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the cases of insolvency therein mentioned, shall be deemed to extend, as well to cases in which a debtor, not having sufficient property to pay all his debts, shall have made a voluntary assignment thereof, for the benefit of his creditors, or in which the estate and effects of an absconding, concealed, or absent debtor, shall have been attached by process of law, as to cases in which a legal act of bankruptcy has been committed.” The first case, in which the construction of these laws was brought into question, was that of the United States v. King, in the Circuit Court of the United States for the Pennsylvania district. Wallace’s Rep. 22. It was there decided, that the fact of a debtor being unable to pay all his debts, did not bring his case within the act of congress, unless his insolvency was manifested by some notorious act. And, therefore, a conveyance made by him bona fide, and for valuable consideration of part of his estate, was good against the United States, although at the moment of making the conveyance, the amount of his debts exceeded the amount of his property. This construction has been uniformly adhered to, in the cases which have come before the Supreme Court of the United Slates. Those cases are the United States v. Fisher, 2 Cranch, 358. The United States v. Hoe, 3 Cranch, 73. Prince v. Bartlett, 8 Cranch, 451. Thelusson v. Smith, 2 Wheat. 423. The United States v. Howland, &c. 4 Wheat. 108. The opinion of the Supreme Court was expressed with great clearness and precision in the case of Thelusson v. Smith, and I will give that part of it which is most material, in their own words. “ The point decided in the cases of the United States v. Fisher, and the United States v. Hoe, was, that a mere state of insolvencey, or inability in a debtor of the United States to pay all his debts, gives no right of preference to the United States, unless it is accompanied by a voluntary assignment of all the property, for the benefit of his creditors.” And again, “if, therefore, before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a fi. fa. the property is divested out of the debtor, and cannot be made liable to the United States. A judgment gives to the judgment creditor, a lien on the debtor’s lands, and a preference over all subsequent judgment creditors. But the act of congress defeats this preference in favour of *382 the United States, in the cases specified in the 65th section of the act of 1799.” This extract from the opinion of the court delivered by Judge Washington, in Thelusson v. Smith, contains every thing which is necessary to govern the decision in the case before us. From all the facts which are made known to us, we must take it, that the defendant made a bona fide mortgage to the plaintiff, for the purpose of securing a just debt. And, we have no evidence of such an insolvency as the act of congress requires, in order to give a preference to the United States, until the general assignment made by the defendant, which being subsequent to the mortgage, the United States are not entitled to a preference. Neither are the general assignees entitled to a preference, because the date of the mortgage is prior to the conveyance to them. So far then, the mortgagee’s pretentions to the money in court, are good. But how stands her Case when opposed to the judgment creditor? I cannot perceive upon what ground she can resist his claim to priority. The judgment was a lien on the mortgaged property, from its date. It will not avail the plaintiff to say, that the judgment has no efficacy against the United States. We have already considered the claim of the United States, and shown that it cannot prevail. It is not the object of the plaintiff to receive this money in order to pay it over to the United States. She claims it in her own right, and cannot be permitted to cover it under the pretentions of the United States$ which she has successfully resisted so far as concerns herself.
The attorney for the United States has urged the same kind of argument in favour of the United States. Although the mortgagee’s title is good against the United States, says he, yet, because the mortgagee must yield to the judgment creditor, therefore, the United States shall take. The argument attempts to reconcile things which are incompatible. It is first contended, that the jndgment is annihilated by the act of congress; and then, the United States are to set up this very judgment, and avail themselves of it, to obtain a preference to the mortgagee. For it is certain, that in no other way can a preference be obtained. It is the good fortune of the judgment creditor, that a case has arisen, for which the act of congress has not provided. The judgment was in full force, as respects all but the United States, and the' United States have not brought themselves within the scope of their own law. Then, as they cannot take the money, it is nothing to them, into whose hands it goes. When they are out of the field the other combatants must be.left to fight it out, under our own laws. Now, between them, there is no doubt. Tiie mortgagee cannot stand a moment against the judgment creditor. I am, therefore, of opinion, that Chancellor’s executors should take the money.