The opinion of the court was delivered by
Gibson, C. J.
Deeds, which are parts of the same transaction, constitute but one instrument. The mortgage in this instance, (for such it undoubtedly is,.) consisted of an absolute conveyance and a bond with condition to reconvey on payment of six thousand dollars by the grantor. The absolute conveyance has been recorded; but; according to the letter of the act of assembly, the mort *71 gage, which consists of all its parts, has not: and it remains to be seen whether it be well recorded within the equity of the act.
The sum of the argument in support of tlie affirmative, is, that as the parties interested were bound to take notice of the absolute conveyance, which was, undoubtedly, well recorded, enough was done to lead to an inquiry into the true nature of the transaction, which is said to be equivalent to full notice. Constructive notice from facts, is a conclusion of law, which can be drawn only from facts actually within the knowledgé of the party, and never from those of which he had only constructive notice; else we-.should have construction on construction, and inference on inference, without beginning or end. In Simon v. Brown, (3 Yeates, 186,) and Heister v. Fortner, (2 Binn. 40,) a deed recorded without a proper probate or acknowledgment, was held to be notice of nothing; and I apprehend the effect Would have .been the samé had the person to be affected actually seen the registry. To affect a party with constructive notice, though often a necessary measure on grounds of public policy, is always a harsh one; and for this reason the courts have not dispensed with the most trifling circumstance required by the legislature:- as in the cases just cited. The. registry of a deed was intended itself to contain all the essential parts of full and complete notice of every fact necessary to be known, instead of barely putting the party on the scent and requiring him to run all round the world after the grantor, and the grantee, seeking information as to the true nature of the transaction. The deed.recorded, here, was notice.of nothing but what it purported to be, and by that the creditor was informed that the land had been conveyed unconditionally.' What reason had he to suppose that the fact was otherwise ? and, if he had none, what was there to put him on inquiry? But, what if he had inquired of the parties, and they had refused to answer? The recording acts were intended to guard against injury from secret conveyances; and .distinct provisions are made for purchasers or mortgagees, and for creditors. In Heister v. Fortner, already cited, and in Rogers v. Gibson, (4 Yeates, 112,) it was held that ¿ judgment creditor is not a purchaser, and só not within the purview of the.act of 1775: and this, I presume, because he cannot be prejudiced by ignorance of an absolute conveyance which leaves nothing in the debtor to answer his demand, and it is, therefore, not necessary to his protection that he should have notice of it.. But in the case of a defea^ sible deed he would be apprized of the existence of an interest still in the grantor, which might, by proper diligence, be levied on by an execution; so that the existence of the defeasance is the only thing. which it would be beneficial for him to know. For this reason, it is, the legislature provided in the act of 1715, that without recording, “No deed or mortgage, or defeasible deed, in the nature of a mortgage, shall be good or sufficient to convey or pass any free *72 hold or inheritance,” unless such deed be recorded six months from the date: a provision, which is not applicable to other conveyances. It would seem the legislature had in view the prevention of the very mischief which is complained of here, by enacting that no conditional conveyance, which is not fully recorded, shall stand in the way of an execution by a creditor, in favour of whom, the estate is to be considered as still in the grantor. It is evident, then, that what- is a sufficient registry in the case of á purchaser may be otherwise in the case of a creditor.. We will suppose, what may reasonably be suspected in the case before'us, that the conveyance is a contrivance to keep creditors at bay, indefinitely, or till the grantor tender a sum actually due which may be inconsiderable in comparison with the value of the property — what beneficial end would there be obtained from inquiring of the parties whether they meditated a fraud ? To say that fraud, without the aid of the recording acts, would be sufficient to avoid the deed, is to say nothing. Fraud might exist without a possibility of detecting it; and it is precisely in such cases that the recording acts operate most beneficially by suspending the necessity of proof of actual fraud.. Nor is it better to say that the refusal of the parties to declare the truth, in case of being inquired at, would furnish full proof of fraud'. The existence of what purports to be an unconditional conveyance is not a reason to suspect the. existence of a defeasance or declaration of trust; and this, as I have said, is a good excuse for the want of an inquiry. The registry of defeasible deeds was inténded to be for the benefit of both creditors and purchasers; but what'benéfit a creditor can derive from the registry of part of a mortgage which has a direct tendency to mislead in a point essential to his interest, I am at a loss to conceive. It would be better for him that the absolute part of the conveyance were not recorded, as he would then discover no apparent obstacle to obtaining satisfaction by execution of the land. *By a trick of this sort it is evident that the debtor’s estate might be effectually covered from his creditors, if a creditor might collude with him without the risk of losing what is actually due.
I do not pretend that the registry, in this case, is insufficient to give the bond and conveyance the effect of a mortgage between the parlies, or, perhaps, against a purchaser, (and the decisions of this court have actually gone no further;) but it is different in regard to a creditor, who is entitled to notice, by the registry, of every fact that may effect his interest.
Thé legislature of New York has specially required deeds of defeasance to be registered; from which it may be inferred that experience had shown the practice of registering defeasible deeds as absolute conveyances, to be mischievous. With us, however, such cases fall within the general 'provisions of the act of 1715; in the letter or spirit of which there-is nothing, to exclude them. Even *73 ■were the matter open to construction, I would hold an omission to ¡record any part of a mortgage to be fatal.
Rogers, J., and Huston, J., concurred.
Tod, J.
Was the deed to Henry Friedley, sen., of the 24th of May, 1817, null and void, as against the subsequent judgment of Hamilton and Wood, solely because, though recorded in due time, ■the defeasance, which made it a mortgage', was not also recorded? I think not. In my opinion, the act of assembly does not réquire any such recording, nor the usage of the country, nor the decision of any court, nor the interest of any individual except the mortgagor. He may suffer by his own default in omitting to get his ■defeasance recorded. No other person can. •
If it is not so, then it seems, a mortgagor has nol'hing to do but withhold his defeasance from the record to defeat his own conveyance. The defeasance belongs to him — it must be delivered to him — it goes into his hands by the very act of completion — and ■never into the hands of the mortgagee, whose interest is not to preserve'but to destroy it.
It will be admitted that our act for recording de'eds is not like those British statutes which require a register of every contract for the sale of annuities. I believe it was never heard of, that our law was intended to prevent imposition upon the grantor or mortgagor, or to prevent collusion between the grantor andgrantee, but solely to prevent imposition upon subsequent mortgagees or purchasers, or creditors, for want of the means of knowing that the former owner had parted with his interest in the land, or some portion of it. Clearly, the record which shows a man to have parted with his whole interest, will prevent, as far as recording can prevent, all subsequent deception. It takes away all credit arising from the land. Omne majas continet in se minus.
It would seem to me that if the court below was right in holding the .deed to be void, as against the subsequent judgment, and the mortgagee not entitled even to the amount really due him from the mortgagor out of the purchase money on the sheriff’s sale, then, for the sake of consistency, they must also decide that a judgment entered by default or in any other mode, as is every day the case, for a sum larger than the real claim of the plaintiff, is void as against subsequent judgments, and not valid even for the just debt: a notion which I take to be contrary to the practice in every county in the state. On the same principle the most regular mortgage, containing defeasance and all, if for more money than is really due, ought to be void totally: and a judgment creditor or mortgagee who receives one half of his debt without giving credit for it upon the record should forfeit the residue. How then shall we dispose of the cases of Lyle v. Ducomb, (5 Binn. 585.) Shirras v. Craig, (7 Cra. 50,) and numberless others. In the last named case the was for a but the was not due, it was *74 for advances to be.made, liabilities to be incurred.. Besides, the deed misrepresented the transaction. ' But, says Marshall, C. J., “ it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favour of a person who has been in fact injured and deceived by the misrepresentation.” In Lyle v. Ducomb, the mortgage was for nine thousand dollars; but not a penny was due at the time of the execution, nor was it certain that any thing ever would be due. And another point in that case, more precisely applicable to the present, was,"that the second endorsement, which was relied upon solely to fix the quantum of debt and the terms of redemption, and which gave character to the whole transaction, was not recorded at any time, as appears by the case, certainly not before the adverse lien had attached. Yet Judge Yeates, who dissented from the majority of the court,, did not mention the want of recording the defeasance as an objection, nor was. it mentioned by the counsel in the argument. And in Wharf v. Howell, (5 Binn. 499,) so perfectly unconscious was Chief Justice Tilghman of the necessity of recording the separate defeasance of a mortgage, that he ■says, “ if the mortgagee uses common care he will have the defeasance recorded, or keep a copy,” evidently implying that to keep a copy is as safe to the mortgagee as to have the entry on the record; and expressly declaring that, in his opinion, to keep a copy is to use common care.
I take the rule to be settled that a deed for land, absolute and unconditional on its face, if intended to be merely a pledge for' the payment of money and redeemable, may be shown to be so by circumstances and by parol proof. For this it will be sufficient to cite Wharf v. Howell, (5 Binn. 499.) Dabney et al. v. Greene, (4 Hen. & Mum. 101.) Prec. Ch. 526. 2 Atk. 98. 3 Atk. 388. Pow. on Mart. 200, 201. 2 Hayw. 26. Now-, if we say that old Friedley is not entitled to take out of court the money which he can show to be fairly due to him upon the mortgage, we must, as it appears to me, either disregard all the-above authorities, or, we must decide that a mortgage, having its defeasance in writing separate and unrecorded, is absolutely nothing against a subsequent incumbrance, while the same paper, had its defeasance been by parol only, w’ould be good and conclusive: that is, if I understand the matter, we should establish a rule making a difference between the two cases without any conceivable reasoii for it: a rule which may be evaded by the parties by the easy contrivance of having a .verbal instead of a written clause of redemption.
The only semblance of direct authority, cited for the defendant in error, was Dunham v. Day, (2 Johns. Ch. Rep. 188.) That decision has been reversed on this very point in the court of error. 15 Johns. 555. Besides, the case of Dunham v. Day, was put by the chancellor on the words of their statute, which differs from «ur law. So, in. Massachusetts, by an act of 1802 — “ No convey *75 anee of any land, unless for. a term less than seven years, shall be defeated or incumbered by any bond or other deed, or instrument of defeasance, unless they are registered.” Kelleran v. Brown, (4 Mass. 445.) Now, we have ho such statute in Pennsylvania, and the very fact of their existence in New York and. Massachu~ setts, shows that without them the law in those stales would have been otherwise.
I admit that in a conveyance between father and son, an unrecorded defeasance may be a suspicious thing. So there might' be just ground of suspicion, if no defeasance at all. In either case fraud is inquirable into by the jury. The question should.have been left to them. Even if fraud was apparent, (of which, by the way, there is no evidence on this record,) I would still think the court below was in an error, to obviate a fraud in a particular case, by attempting an amendment of the law by an e$ post facto decision. Judgment affirmed.