[PHILADELPHIA, APRIL 3d, 1841.]

MILLER and Another *against* MUSSELMAN and Others.

IN ERROR.

Although a mortgage given to indemnify a surety may not have been discharged by a sheriff's sale made prior to the act of 1830, under a junior incumbrance, yet if the mortgage was absolute upon the face, and contained no notice of its having been given for such purpose, it was discharged by such sale.

ERROR to the Common Pleas of Northampton County.

The action below was a *scire facias* on a mortgage given by David Musselman to Jacob Bauer, Jacob Miller, and George Kern, to secure payment of the sum of $2,500, on the first day of April, 1820. The mortgage was dated the 20th day of March, 1820, and was duly recorded two days afterwards. It was admitted and agreed that though the mortgage was given for the payment of money simply and absolutely, yet that in fact it was intended to indemnify the mortgagees against any losses which they might sustain in consequence of having on the 20th of August, 1816, become bound in a bond of indemnity to Peter Roth and John Roth in the

(Miller *v.* Musselman.)

sum of $3062 69, which recited " That whereas the said David Musselman, by seven obligations, bearing even date therewith, together with the said Peter Roth and John Roth stood bound unto the heirs of Conrad Roth, deceased, in the above sum of $3962 69, to be paid by the said David Musselman, his heirs, &c.   Now the condition of the above obligation is such, that if the said David Musselman shall pay or cause to be paid the said above mentioned debt of $3962 69 to the said heirs of Conrad Roth, and if the said Bauer, Miller, and Keim, their heirs, etc., shall from time to time, and at all times hereafter, keep harmless, and indemnify the said Peter Roth and John Roth, their heirs and assigns, etc., of and from all suits, judgments, costs, and charges, of and on behalf of the said above mentioned seven obligations, &c. &c."

This suit was brought on the 15th of August, 1839, and the *scire facias* was made known to David Musselman and John Lahr, and Jacob Kaske, administrators of John Roth deceased, Elizabeth Roth, his widow, and William Roth and others, children of the said John Roth and Jacob Vogel and wife terre-tenants.   The plea was payment with leave, etc., and the cause came on for trial before BANKS, (President) on the 1st of February, 1840, when the plaintiffs, to maintain the issue on their part, gave in evidence the mortgage aforesaid, and then proved various payments made by them to the heirs of Conrad Roth, deceased, in the years 1838–39.

The defendants then gave in evidence a judgment, obtained by Catharine Roth, widow of Conrad Roth, deceased, against David Musselman for her dower, on the 23d of August, 1824, in the Court of Common Pleas of Northampton County; also a *fieri facias* on the same for $488 04, which was returned " levied on a tract of land in Bushkill township, containing 120 acres, more or less," also a *venditioni exponas,* and return thereon " Sold to Catharine Roth, for $25, subject to a mortgage, a certificate, of which is hereunto annexed, and the yearly payments of $66 each and every year during the life of Catharine Roth."

The defendants then gave in evidence a deed from John Carey, Jun., sheriff, to Catharine Roth, for the same premises, dated January 25, 1825.

The defendants then offered in evidence a judgment of April term, 1829, Elizabeth Wind to the use of John Wind, against David Musselman, Daniel Roth, Peter Roth, and John Roth, executors of Conrad Roth, deceased.   Transcript of a judgment before Adam Daniel, Esq., rendered February 16, 1824, for $85 89 debt, and $1 37 costs.   Judgment revived before Adam Daniel, Esq., May 4, 1829, for debt and costs.   Entered here July 24, 1829.   Also a *fi. fa.* to August term, 1829, thereupon " levied on land in Bushkill

township, containing 125 acres, more or less;" also inquisition and condemnation; also a *venditioni exponas,* and return thereto, " Sold to Catharine Roth for $175 ;" also a deed from Jacob Kern, sheriff, to Catharine Roth, for 125 acres of land in Bushkill township, late the estate of Conrad Roth, deceased, dated the 23d of May, 1829.

To all which the plaintiffs' counsel objected ; whereupon the court overruled the offer, and rejected the evidence; to which decision the defendants' counsel excepted.

The defendants then gave in evidence a deed from Catharine Roth to John Roth for the premises dated the 15th of April, 1830, for the consideration of $175, and the payment of $36 annually to the widow, &c.

The evidence being thereupon closed on both sides, the defendants' counsel requested the court to charge the jury, that the property claimed under the plaintiffs' mortgage having been sold under a judicial sale by the sheriff, the plaintiffs could not recover in this action.

The learned judge charged the jury as follows.

" The evidence in this case entitles the plaintiffs to a verdict against Musselman, the mortgagor, but not against the terre tenants ; you will, therefore, return your verdict accordingly."

The jury found for the plaintiffs against David Musselman $1952 with costs, and in favour of the terre-tenants, Lahr, Kaske, and others.

The plaintiff then took a writ of error, and assigned for error the charge of the court, that their verdict should be in favour of the terre tenants.

Mr. *Ihrie* for the plaintiffs in error.

The plaintiffs were back bail, and took this mortgage to secure themselves. They were not called upon to pay until after the sale on the widow's dower. The only question is, whether the sheriff's sale in 1825, divested the lien of this mortgage. We say that it was merely a mortgage upon a contingency, for an indemnity which might be recoverable or not according to circumstances. I admit the rule as it existed before the act of 1830 ; but there were exceptions, and this case comes within one of those exceptions. In *Fisher* v. *Kean,* (1 *Watts,* 259,) a judicial sale was held not to divest the widow's lien. One reason given was that the amount was not known. In *Knaub* v. *Esseck,* (2 *Watts,* 282,) a mortgage conditioned for paying an indefinite number of annual instalments, depending for their continuance on a life in being, was held not to be divested by such a

(Miller *v.* Musselman.)

sale. To the same effect are *Loan* v. *Snively*, (4 *Watts*, 397,) *Helman* v. *Helman*, (4 *Rawle*, 447,) *Mentzer* v. *Bruner*, (8 *Watts*, 296.) In *Willard* v. *Morris*, (3 *Rawle*, 109,) the exception is recognised. There were two mortgages upon the premises in this case, and it is not certain to which the conditions of sale refer. The other mortgage was to the widow. She bought for only $25, and could not have been ignorant of the circumstances.

Mr. *Maxwell* contra.

There is nothing to distinguish this case from the repealed decisions upon this point from *M'Lanahan* v. *Weyant*, (1 *Penn. Rep.* 112,) to *Corporation* v. *Wallace*, (3 *Rawle*, 109.) The sale in this case was subject to the mortgage of the widow's dower only. The mortgage is absolute on its face, and there is nothing to show that it was merely cautionary. Is a purchaser at sheriff's sale bound to go round and ask the holders of mortgages whether there is any thing behind? In *Bank* v. *Douglass*, (4 *Watts*, 95,) the principle is settled that a judgment given to a surety is available before the surety is damnified. The mortgagees here could, therefore, have come in upon the money in the sheriff's hands, and the purchasers had a right to insist on their doing so. *Stewart* v. *Stocker*, (1 *Watts*, 135.)

The opinion of the court was delivered by

ROGERS, J.—A judicial sale, as is shown by the cases cited, divests all liens, whether general or specific; and in *Willard* v. *Morris*, (2 *Rawle*, 56,) and in the *Corporation* v. *Wallace*, (3 *Rawle*, 109,) the same rule was extended, so as to divest the lien of a prior mortgage. Yet, although this is the general rule, it is not without exceptions; as for example, when the amount of the lien is uncertain, and is incapable of being reduced to a certainty. Whether this case falls within the latter class, we do not decide, although it is not altogether unlike *Knaub* v. *Esseck*, (2 *Watts*, 282.) We are of opinion that the cause is clearly with the defendants in error on another ground. The mortgage, which it *now* appears was given as an indemnity to the plaintiffs as security, stands on the record as an absolute mortgage for the payment of a specific, ascertained, certain sum of money. And, as there is nothing to put the vendee on his guard, he has a right to consider the mortgage, what it purports to be, subject to all the rules which apply to that species of lien. At the time of the sale, the sheriff's vendee had no reason to suppose that further search would lead to any other result than that which is apparent on the record. It seems from the evidence that the mortgagees omitted to have the mortgage drawn in proper form, to entitle them to claim the benefit of the exception; but the loss consequent on the omission, cannot with any propriety be visited on the innocent vendee. The principle which governs this case has already been ruled

(Miller *v.* Musselman.)

in *M'Lenegan* v. *Reeside,* (9 *Watts,* 510,) and in *Freedley* v. *Hamilton,* (17 *Serg. & Rawle,* 70.)   In *M'Lenegan* v. *Reeside,* it is decided that whatever may be the transaction between the immediate parties, a third person is not bound to look further than the recorded conveyance. A vendee can only judge of it as it appears on the face of the title. And in *Freedley* v. *Hamilton,* that, although an absolute deed and defeasance, made at the same time, constitute a mortgage, yet, if the defeasance is not recorded, it is to be considered as an unrecorded mortgage, and postponed to a judgment creditor of subsequent date, notwithstanding the absolute deed has been duly recorded. The reason of these decisions, and in which alone they can be supported, is, that the deed recorded is notice of nothing but what it purports to be; and that a third person, whether creditor or vendee, is not bound to look beyond it, as there is nothing to put him on any further inquiry.   And because a different rule would subject a creditor or vendee to a certain loss, which he could by no legal diligence prevent, and where, consequently, he is in no default whatever.

It is proper to remark, that the sheriff's sale, here, took place before the act of the 6th of April, 1830, and, of course, is unaffected by the provisions of that act, which saves the rights of mortgagees in certain specified cases.

Judgment affirmed.