KLINE *vs.* McGUCKIN and others.

24   411
c57   95
24   411
60   64

1. A deed in the nature of a mortgage, given by a tenant in common upon his undivided interest in lands, leaves in him an estate which entitles him to apply for partition.

2. The mortgage deed is transferred by the partition, as a lien, exclusively to the share set off to the mortgagor.

3. A conveyance by the mortgagee of such interest, in trust for his wife and children, made without adequate consideration, and with notice to his grantee and to his wife, that the deed to him was simply a mortgage, stands in respect to creditors as a voluntary settlement, and his grantee has no equities or rights superior to his own.

4. An absolute conveyance recorded as such, but by an express oral agreement between the parties taken as a security, is a valid mortgage, and entitled to priority over subsequent liens. The fourth section of the "act to register mortgages" does not apply where the defeasance is verbal.

The argument was had upon the pleadings and evidence.

*Mr. J. N. Voorhees* and *Mr. Van Fleet*, for complainant.

*Mr. W. J. Magie*, for defendants.

THE VICE-CHANCELLOR.

In April, 1860, James B. McGuckin and his two brothers, Edmund and William, were the owners of a tract of land in Union county, as tenants in common. Edmund being indebted to James on an unsettled account for advances, and apprehensive of difficulty from his creditors, gave James a deed for his undivided third interest in the tract, for the purpose of securing his indebtedness. He and James have ever since lived, as they then did, upon the lands in question, which were the homestead place of their father, from whom it descended to the sons. In 1868, partition was made of the lands among the three brothers, by commissioners duly appointed for that purpose, and upon the part set off to Edmund, he gave, in April, 1869, and afterwards, certain mortgages, which, with judgment against him, are sought by means of this suit, to be enforced as liens upon his share in severalty of the premises partitioned. By deed of 19th of May, 1871, James conveyed to one Warner Sherwood, the brother of his wife, the premises or estate which were conveyed to him in 1860 by Edmund, as stated above. The deed to Sherwood was in trust for James' children and wife.

The object of this suit is to have Edmund's interest in the lands subjected to the liens set out in the bill, which was filed upon the belief that the deed of 1860 was intended by the parties to it as an absolute conveyance, or at all events that it would be insisted on as such against the holders of the liens

now sought to be enforced. The evidence produced by the oral examination of the witnesses at the hearing, established conclusively that the deed was not given or intended as an absolute conveyance, but only as a security, and the consequence of this proof is, that the only doubtful question now to be decided, is whether the deed of 1860, by way of mortgage, is prior or subsequent to the liens of the mortgages and judgment set out in the bill. The dispute as to the validity of the proceedings for partition, was settled by the evidence that the deed of 1860 was in the nature of a mortgage, and left in Edmund an estate in the lands which entitled him to apply for partition. The proceedings in partition so far as appears, were valid and lawful, and the mortgage deed to James is transferred as a lien, exclusively to the share set off to Edmund. I have no difficulty in regard to the effect of the conveyance in trust by James to his brother-in-law, Sherwood. The latter stands in James' place, with no superior equities or rights. This I take to be perfectly clear for the reasons, first, that the trust conveyance, for the wife and children of James, was without adequate consideration, and stands in respect to creditors as a voluntary settlement, and second, that both Sherwood and his sister, for whom he acted, had notice that Edmund's deed to James was not absolute, but simply a mortgage. No reasonable doubt can be entertained upon the latter point, in view of the testimony of Sherwood, himself, and of Myers, who was the principal actor in the business between Sherwood and James and his wife. The claims of his creditors now did not arise till several years later. There is nothing, I think, to warrant the conclusion, that as against the present creditors the deed of 1860 is void, under the statute of frauds.

As before said, the question to be decided is one of priority. The deed of 1860 was recorded as an unconditional conveyance. There was no written defeasance; the agreement making it defeasible, being only a verbal one. The lien holders had no actual notice of the deed before the accruing of their liens, and insist that no constructive notice was

afforded by the record, for the reason that the recording was not made in pursuance of the statutory provisions applicable in that behalf to mortgages. They insist that its effect is, therefore, no greater against them than if not put on record at all.

The question turns upon the true construction and meaning of the provisions of "An act to register mortgages." *Nixon's Digest*, (4th ed.,) 611. The fourth section of that act, and the one with reference to which the other sections bearing upon the question must be construed, is as follows: "If any deed or conveyance which shall be made of lands, &c., be expressed in absolute and unconditional terms, and it shall appear by any other writing to have been intended by way or in nature of a mortgage, then such deed shall be considered as a mortgage, and be liable to be registered by virtue of this act ; and that the grantee in said deed or conveyance shall not be entitled to or enjoy the benefits and advantages hereby given to a mortgagee, unless an abstract of the writing, operating as a defeasance of it, or explanatory of the intention of the parties that it should have the effect of a mortgage or conditional deed, be also therewith registered, as in case of a mortgage."

If, in the present case, the defeasance had been written, it is undeniable that the deed, as recorded, would be postponed to the liens of later date. Does the statute apply also where the defeasance is verbal ? My conclusion is that it does not. If regard be had only to the supposed object of the act, to the mischiefs it seems designed to suppress, a merely verbal agreement qualifying the nature of the conveyance would apparently fall within the purpose of the enactment quite as properly, if not more so, than a written one. But while unable to see for what reason the statute should distinctly specify and provide for the one case and omit to specify the other, I see plainly that it does so, and this circumstance must be decisive of its construction and effect. Had the legislature meant that the conditional or defeasible character of the deed must in every case be made to appear on the record,

language could easily have been shaped to effectuate that intent. As it is, the language studiously avoids it. *Expressio unius est exclusio alterius* is a maxim in construing statutes, and if apposite any where, is apposite here. The first and fifth sections of the act, if the fourth were omitted, might be argued to provide by implication that defeasible conveyances must be registered or recorded only as mortgages, and the argument, if good, would, where the defeasance was verbal and registration as a mortgage consequently impracticable, necessarily make recording little better than useless. Under statutory provisions in Pennsylvania similar to the fifth section of our act, this opinion is strongly intimated, if not directly expressed, by Chief Justice Gibson in *Manufacturers' Bank* v. *Bank of Pennsylvania*, 7 *Watts & Serg*. 335. The defeasance in that case was written, as it was also in the earlier cases of *Jaques* v. *Weeks*, 7 *Watts* 261, and *Friedley* v. *Hamilton*, 17 *Serg. & Rawle* 70; in all of which cases construction was given to the statute of that state, providing "that no deed or mortgage, or defeasible deed in the nature of a mortgage, shall be good or sufficient to convey or pass any freehold inheritance, unless such deed be recorded within six months from the date." In the above cited cases the doctrine was maintained, though not without dissenting opinions, that an absolute deed of conveyance and a separate deed of defeasance made at the same time, are parts of the same transaction and constitute one instrument, viz. a mortgage, and that the recording of one part without the other, was not a recording of the mortgage, according either to the letter or the equity of the act. These observations are obviously inapplicable where but one written instrument exists. I find no case where an absolute conveyance, recorded as such, but by the nature of the transaction, or by an express oral agreement between the parties, held to be a security, has for that cause been treated as if unrecorded. Deeds of this description are not unfrequent in New Jersey, and have in many cases been decreed to be mortgages. But in no case, so far as I am aware, has it been contended that the recording was a

nullity against subsequent liens. In *Van Keuren* v. *Mc-Laughlin*, 4 *C. E. Green* 187, a deed absolute on its face and recorded as an unconditional conveyance, was attacked as fraudulent by a subsequent judgment creditor, but being shown by the evidence to have been taken as a security by an oral understanding between the parties to it, was decreed to be a mortgage, and directed to be paid in priority to the judgment. The cause was argued before the Chancellor and afterwards on appeal, but the priority of the deed, if good at all, though merely a mortgage, does not seem to have been doubted. If the reasonings and conclusions of the Pennsylvania cases be correct, the fourth section of our statute is plainly superfluous. Its existence is proof that the legislature did not intend to effect by the other sections what is effected by the fourth.

In New York and Massachusetts, statutory provisions like the fourth section of our act, have also been subjects of adjudication, but I have discovered no case where the doctrine contended for by the complainant in this suit has been maintained or suggested. The cases, I think, are in accordance with the conclusion I have come to. *Dunham* v. *Dey*, 2 *Johns. Ch.* 188, and 15 *Johnson* 555; *Kelleran* v. *Brown*, 4 *Mass.* 445.

As before remarked, I am unable to discriminate, upon principle or policy, between deeds defeasible by a written agreement and those defeasible by virtue of the oral understanding of the parties. The latter may be used to deceive and keep creditors at bay quite as easily as the former, and they are more liable to occasion contention and litigation between the parties to them, than deeds whose conditions are clearly and exactly expresed in a writing. But my opinion in this case does not go upon policy or principle, but upon the law as the legislature has framed it. Creditors may be as easily and as effectually misled by deeds defeasible on their face and registered as mortgages, as they can be by absolute conveyances like the one now in question. A mortgage for a specified sum, in the ordinary form, may be simply a

security for future advances, and duly registered, will be entitled to priority over subsequent encumbrances for all advances made prior to actual notice of the subsequent encumbrances. *Ward* v. *Cooke*, 2 *C. E. Green* 93. Whatever may be the *form* of the deed, if intended to defeat or delay creditors, it will be invalid by the statute of frauds, but that is not the point here. It is not what forms of deeds or modes of registration may be most liable to be employed to deceive and defraud, but what forms and modes are allowed or prohibited by the act, and this point must be determined by the words as they stand.

I shall therefore advise that the deed of April, 1860, be decreed to be a mortgage ; that a further hearing be had to ascertain the amount due under it from Edmund to James, and that the complainant be at liberty to redeem by paying the amount so ascertained, or to sell the mortgaged premises, subject to the lien of said mortgage.

Some of the testimony taken before me relates to the nature and particulars of this indebtedness. I will therefore not advise a reference to a master, but will hear such further evidence as either party may be able to produce in regard to it, and will compute the amounts due on the respective encumbrances of complainant and defendants. I will do this upon such notice by either party to the other, as would be requisite upon a reference to a master.