The opinion of the court was delivered by
Top, J.
(After stating the'facts of the case.) — We have no direct precedent to guide us. The case itself could scarcely arise unless by an uncommon depreciation of land. Clearly, the money in the sheriff ’s hands must be considered as' if raised by sale of the land upon the mortgage itself: the mortgage being the first lien. It is remarkable that the seven bonds are not mentioned ih the mortgage, nor any thing said of instalments. The instrument recites a debt of five thousand and thirty-six dollars by a writing obligatory, payable on the 15th of April, 1824. But, in fact, this sum was divided into seven bonds. Whether theré is any right of priority among the assignees, is the chief question. The word “ assigned”.and the word “.transferred;” seems to be made use of in the case indifferently. It is not stated'whether the bonds were assigned in form, or whether they .were handed over with endorsement of the name merely, or handed over without any indorsement at all. And, in my opinion, it is immaterial how the transfers were, provided there was no guarantee. It is settled, that the word “assign,” .implies no guarantee.- Nor was there any assignment or transfer of the mortgage itself, except what is implied by passing the bonds: nor any promise or representation holding out a preference in payment. Indeed, nothing appears in the case to show that in point of fact, the subject.of priority of payment was in, contemplation of any of the parties: and no contract to that purpose can be implied, except what the law implies. All the parties must have been aware, that no scire facias could be sued upon the mortgage until a year after the day of payment. Whether the other bonds had been transferred, or whether they remained still in the hands of *403 Walton, does not appear even to have been known to the several assignees.'
In this case, under the circumstances of it, I take-the’rule to be, that the holders of the bonds are to come in each one for. his equal proportion and no more. Perhaps no ease on either side directly in point can be found in the books. ' Some cas.es resembling this in principle might be mentioned, in which a preference-such as is here claimed, could most clearly not be permitted. A man dies insolvent in part. -He owed two bonds, both due to the same person* who has transferred the'first bond to A., and the other, on the next day to B. The estate.pays fifty per cént.; and A. insists that he, holding the bond first payable and first assigned, is entitled to his whole debt, and that B. is entitled'to nothing. Again, a father, as sometimes happens, divides his estate among his children by assignments of bonds and notes. After a while, upon' a loss happening, one, two, or three, of them, discover that their assignments were.first made, and claim the whole’oPthe money;.. Or, a holder of twenty bank shares, assigns them on twenty different days, to twenty different persons, and upon winding up, .a loss happens: I believe it never would be-contended that the owner of the share first assigned, shall be indemnified, and his share made up to its full nominal amount, at the expense of subsequent assignees. It is said, the bank shares are entirely separate and distinct things; and are connected so far only as that a common fund gives- them their value, and that they are assignable by the express terms of the law: it might be suggested in answer, that so were. Walton’s bonds separate and distinct things, and connected by deriving all their value from a common fund, the mortgage, and by express law are assignable.
Equality is equity. One important head of equity and of law too, is average contribution: by which an unexpected loss shall be divided among all who are concerned in the matter, in proportion to their interests.
The doctrine o{prior in tempore, is, I think, misapplied to this case. Priority of grant, I can understand. So, priority of judgment: for, a judgment may be. considered, pro tanto, a grant of land. But a grant of land gives ho prior right to a tract of land adjoining. Here .the bond assigned to Cowdeny/as not the same that had been assigned to,/, and M. Brown, but a totally different, instrument. It is as precisely the business of the mortgage to pro-tect the last bond as it is to protect the first. It is as old a lien for the one, as for the other. I admit, the doctrine, that a man shall not transfer a better right than he himself has: but,' in my apprehension, the doctrine is inapplicable to the case.
We ought to give as little room as possible for uncertainty and litigation.. Bonds are frequently sold, handed over, .deposited, pledged, without assignment. Who will'ascertain tfie'date of these things? And who does not see, not only mistakes without number, but the temptation to fraud, and the facility of committing it, by *404 antedating a transfer, if the whole value of the instrument is to depend upon the date of the assignment? *
The general doctrine is supported by the following cases. In Carpenter v. Carpenter, (1 Vernon, 440,) where a man had conveyed land to raise money for-his. wife, and another sum'for the issue, the fund proving insufficient, the chancellor decreed that the jointress’ and the issue should contribute proportionably to the loss, because they claim by the same .settlement.
In Braithwait v. Braithwait, (1 Vernon, 334,) by the deed constituting the fund, the portions of the children were directed to be paid according to their seniority-; yet a deficiency happening, it was decided by the court- against the words of the deed, that the loss should not be thrown upon those who were last to be paid, but should be divided arnpng all the children.
In 2 Chan. Rep. 155, legatees were decreed to abate .in proportion, notwithstanding an agreemént to the contrary.
In Brown v. Allen, (1 Vern. 31,) decreed, that a .pecuniary legatee should abate in proportion with the rest, though his legacy was directed to be paid in the first place.. The same decision in 2 Ves. 420., And Lord Hardwicke has fully confirmed the doctrine. 3 Atk. 100. And in Eure v. Eure, (1 Eq. Cas. 115,) where a rent charge of ten pounds was devised to A., and the same annual sum out of Ihe same'land given to B.; it was held, that as the land was insufficient for both, they should lose equally.
Applying the principles to the present case; and without.evidence of,any compact between the assignor and assignees’of the bond, I am of opinion, that there is no preference implied by the law, and. that the' bonds are to be paid in equal proportions;
It follows, that Walton is entitled to an.equal dividend with the rest, on the three’ last bonds; because he has never parted with them,' nor. with any right connected with them. It seems impossible for us to decide that Walton is not entitled, when we say that an assignee under him would be entitled to a dividend of the money. There appears no fact nor principle, to exclude Walton. There is no warranty in his transfer express or implied. So far from there being any assignment by him'óf his whole right in the mortgage, there is no assignment of any part of it, except what is implied by the transfer of the bonds. If Walton has imparted no preference to others, he certainly must bp considered as retaining his right of equality. All this I believe to have been intended by the parties at the times of the transfers. If they meant otherwise, I am only .sorry that they did not express their meaning, as it was very, competent-and easy for them to do. We must adhere to the rule, which, unless there is some agreement to the contrary, in cases of this kind, throws the loss in equal shares upon all the owners. Judgment reversed, and judgment that the money be distributed to all the holders of-the bonds,, pro rata, according to the debt and interest due at the time of the sheriff’s sale.
*405 Gibson, C. J.
Contribution obtains among such as stand in equal equity; and the question is, whether the parties stand so here. The facts are these: — A bond and mortgage were given to secure a debt, which was at the same time divided into instalments and included in other bonds; several of which have been assigned to different persons in the order in which they fell due, and the fund obtained by a sale of-the mortgaged premises is found to be insufficient. It is contended on the one hand, that the bonds are entitled to priority in the order in which they were assigned; and on the' other, that all ought to participate in the 'benefit and contribute to the loss.
I shall consider whether the assignor is in equal equity with the assignees; and if not, whether subsequent assignees are in greater equity in regard .to those that precede them, than the assignor whose.title they bear. . , '
First, as between the assignor and the assignees.. It is .conceded that, the assignor of a bond is not bound to see it paid, the'covenant which is-implied from the word “ assigned,” extending no further than that the assignee shall receive the money to his own use, or that the assignor will account for it if received by, him; and it is settled that an action will not lie on any other covenant or promise arising out of the contract of assignment. But, the assignor may, notwithstanding, contract a moral obligation, which, although insufficient to raise a promise by implication, is a sufficient founds-' tionfor an equity, to the existence of -which a legal obligation is not at all indispensable. Suitors are driven into chancery only because their demands are not .founded on a legal obligation. The equity in the case before us, would be termed in the civil law, a duty of imperfect obligation; and it is entitled to a decisive influence in the exposition of stipulations that admit of interpretation. In Mackie’s Executor v. Davis, (1 Wash. Rep. 219,) where an action ivas sustained on the contract of assignment, it was held that it created even a legal obligation; and such is still the law of Virginia, although it is otherwise in Pennsylvania, Jersey, and most of the other states. But, although aq action be not sustainable on the contract, the assignment is evidence of indebtedness, dehors, which is not extinguished by accepting the thing assigned; else it were difficult to sustain the decision .in those cases,-where the subject of the assignment having provediunproductive, the assignee has been allowed recourse to the assignor on the original contract. It is curious to trace the progress of the-courts in their struggle to escape from the principle with which they set out, that the transTer of money or securities, was to be governed by tbe rule so beneficially applied to the transfer of other chattels, in respect of which the law implies a warranty of the title but not of the quality; a rule of inestimable value, when restrained to the sale or exchange of commodities, but altogether unfit for the regulation of payment, in coin or securities. Lord Coke relates (Wade’s Case, 5 Rep. *406 115,) that it was determined in Vane v. Stanley, that a party who had received money without objection, was concluded and the debt discharged, though he had discovered the money to be counterfeit before he left the place: And in The Bank of England v. Newman, (l Lord Raym. 442,) it was held, that discounting a bill without endorsement, precluded the bank, the drawer having become insolvent, from recovering the money advanced as so much lent. But, in Tassel v. Lewis, (1 Lord Raym. 743,) the same judge held that payment in goldsmith’s' notes, (a species of negotiable paper having the essential properties of bank-notes,) would' be at-the risk of the party receiving," if he did not immediately call on the goldsmith for the money: in other words, that the .debt ivould not.be discharged if the drawer were insolvent at the time. This vyas a step in advance, and taken even by Lord Holt. At present, the courts have,'by a variety of decisions, reached the point of permitting the seller of goods to proceed on the original contract, notwithstanding there may have been payment in counterfeit notes or worthless securities, wherever it cannot be shown that he agreed to stand to. the risk. Whether they will ever arrive at the point allowed by the Court-of Appeals of Virginia, and sustain an action on the contract of assignment, is unnecessary to the argument;, it being sufficient that they have been drawn from their ground by a clear, indisputable, and overpowering equity, on the part of the assignee, which necessarily arises'whether the transfer be affected by delivery or a written assignment.
If the existence'of .a particular equity be established, the contract is to be construed as beneficially in accordance with-it, as the words will bear. Here the debt was the principal and the mortgage an' accessory; consequently, the assignment of a particular part of the debt, .was an assignment of the mortgage, not pro rata but pro tanto. . Without evidence of a special agreement, we are not to intend that the assignee consented to receive the bond without, the mortgage,'as a security for the whole sum due, forthe same reason that a note received as cash’, is not to be treated as satisfaction' without proof of its having been so considered by the parties. The assignee may doubtless have obtained the bond at an. under value, in consideration of agreeing to let the assignor into an equal participation of the mortgage fund: but a plain answer to this is, that nothing of Urn sort is to be found in the case, and it may be. affirmed on authority, to be drawn from analogy,-that the law, will' not imply it. The adequacy of the consideraban can be allowed to operate only where the terms of the assignment are doubtful, and then.only as a circumstance to be left to a. jury.
The.vendor of part of an .estate which he has encumbered by his own act, cannot demand contribution of-the vendee,' being bound both at law and in equity, to apply the residue in satisfaction of the debt. (Nailer v. Stanley, 10 Serg. & Rawle, 450. Clowes v. Dickinson, 5 Johns. Ch. 235.) Yet the vendee might, with equal plau *407 sibility, be said to have got the estate at an under value, in cohsiration of its bearing a share of the burden on the whole.' But the vendor is bound to discharge the encumbrance in case of the vendee, even where the latter has not paid a valuable consideration, (Sir William Harbert’s Case, 3 Rep. 12.) And w.hy shall not the assignee of a chattel have the full benefit of, the. thing, whether the bargain be a good or a bad one? The vendor of part of an estate, burdened with a rent charge, may no doubt compel contribution by his own vendee; which apparently is .nearer-to the case under consideration than that of an-estate encumbered by the vendor himself. This case-of the r.ent charge is compressed in a short note, (1 Eq. Ca. Ab. Contribution, A. 1;) but the-difference seems to arise from therent being of the essence of the latid out of which it issues, and incapable of separation from it, in consequence of which,-the vendee must, from the very nature of the thing, purchase subject to the encumbrance; whereas, in the other.case, the-land is only secondarily liable, being chargeable as surety for what is the personal debt of the vendor, who is bound for the whole. But there can be no safe analogy in this respect between the conveyance of land in regard,to which the maxim .is caveat emptor,- and the assignment pf a chose in action which, in consideration of the price paid, ipso facto, induces a moral obligation to make the thing assigned as available in the hands of the assignee as it purported to be in the hands of the assignor.
. My position is, that the assignee is -a purchaser for a valuable consideration of all - the securities of the assignor, (Martin v. Mowlin, 2 Burr. 978, Jackson v. Willard,4 Johns. 41,) and of all his remedies, (1 Mad. Ch. 435,) and may use them in any way. he may think proper, as freely and as beneficially as could the assignor himself, to whom it was indisputably competent at the time of the assignment, to order the mortgage to stand as a security, in the first place, for the instalment due on thé particular bond.
If such then be the rule of priority between the assignor and assignee, it is easy to show that it holds among assignees in succession. of separate parts of the same debt. In Clowes v. Dickinson, already cited, the question of contribution, which was among purchasers of separate parts of an encumbered estate, was determined on the principle, that subsequent purchasers can stand in no^ better equity than he from whom they purchased. Prior in tempore potior injure, is a maxim which concerns equitable as well as legal rights; and to -which there is no exception but the case of a subsequent encumbrancer who has got in the legal estate,- of the benefit of which chancery will not deprive him, unless he has had notice of the prior encumbrance, without which- there is equity against, equity, and the party having the legal title will prevail; The cases on the subject may be found in 1 Fonb. 310, note, (e), from which it is conclusively deducible, that the purchaser of an equitable title is not to be affected by a sale to a subsequent purchaser of the same *408 title without'notice; just as the purchaser of a legal title would, at the common law, hot be affected by a sale tó a subsequent^ purchaser of the same title without notice. With us this, principle has been changed-by statute as. regards land, but it still holds as regards .chattels. None but a purchaser of the legal title can insist on being placed on higher ground than was occupied by him from whom he purchased; and, that even he can do So,, arises from the peculiar hardship which there would be in subjecting the purchaser of a title perfect on its face, to latent equities'against which it was the ■ duty of the cestyy que trust, or encumbrancer .to' put him on his guard. In this Case, had (he subsequent assignees obtained a legal assignment of,the mortgage, it would have made a,difference: for as th.ere would have been equity against equity, the legal title must have prevailed. But ás neither party has any thing but an equity, priority of title is priority of right. If the subsequent assignees could set up want of notice at all, it would carry their rights beyond mere participation, and postpone the prior ass’ignees altogether; thus,, inverting the order of priority, in which it seems to me they ought to stand. Is there even an apparent hardship in postponing the assignee of a bond secured by a mortgage, who has not record notice of prior assignments of other bonds secured by the same mortgage? His case is no worse than that ofa purchaser of-the legal title who has neither had notice nor the means of obtaining it. A mortgage is the subject of a legal assignment, because the mortgagee has the legal estate in the land; but the interest on a mortgage which passes by the legal assignment of a bond secured by it, is a,mere equity, and the assignee as in Whitfield v. Fausset, (1 Ves. 391,) must, therefore, abide by the case of the assignor.
I am of opinion, (hat the money in the hands of the defendant, should be applied in satisfaction of the bonds in the order in whieh they were assigned.
Smith, J., did not hear the argument, and took .no part..
Judgment reverséd, and judgment of distribution as above.