## COWDEN'S ESTATE.

### APPEAL.

A. became the owner of a large real estate, consisting of divers tracts, lots, and parcels of land lying in two different counties, given to him by the will of his father, subject to the payment of the testator's debts and various legacies bequeathed by him to his daughters, grandchildren, and great-grandchildren. The legacy to one of his daughters was an annuity of $200, during her life; and most of the grandchildren and great-grandchildren being minors, the legacies to such were made payable on their attaining full age, or getting married. The whole of the estate being thus encumbered, the owner executed mortgages on different portions thereof, to different persons, at different times, to secure the payment of debts contracted by him, and gave judgments also in the Court of Common Pleas of each county where the estate lay, at different times, to different persons, for various sums of money. The whole estate, lying in both counties, was sold under judicial process, at the instance of various creditors of the son, and thereby converted into money, which was brought into court for distribution and apportionment amongst the different claimants.

First. Ordered that the debts of the testator and the legacies, so far as they had become payable at the time of the judicial sale, or their cash value capable of being ascertained, should be paid in full out of the moneys arising from those portions of the estate last encumbered, which would otherwise have been applicable to the payment of such encumbrances.

Secondly. As to the annuity given to the daughter, becoming payable subsequently to the judicial sale, and the legacies payable to the legatees upon their attaining full age, or getting married, where neither event had happened at the time of the sale, and their cash value, therefore, incapable of being ascertained; they must still remain a lien or charge upon the estate as before, and be paid out of it, in the hands of the purchasers, according to the inverse order of time, in which the encumbrances or liens, for which it was sold, were created by the son on the different constituent portions thereof; that is, the part last encumbered by the son must be resorted to first, and if not sufficient to pay, then the other portions thereof in the like inverse order, until the annuity, as long as it shall endure, and the legacies, shall be paid off.

Thirdly. The liens and encumbrances created by the son in favour of his creditors on the different parts of the estate, must be paid out of the moneys arising from the sales, according to the order of time in which they were created: that is, all the moneys arising from the sales of the part first encumbered, must be applied to the payment of such

encumbrance first, and so on until the moneys arising from the sales shall be exhausted, leaving, however, at the last, a sufficient sum to pay the testator's debts, and the legacies which had become payable, or the cash value whereof had become capable of being ascertained at the time of the judicial sale.

Fourthly. The principle laid down in Nailor *v.* Stanley, 10 Serg. & Rawle, 450, is reestablished; and the converse of it, which was adopted by a majority of the court in the case of the Presbyterian Corporation *v.* Wallace and others, 3 Rawle, 109, is overruled. And the case of Donley *v.* Hays, 17 Serg. & Rawle, 400, if not overruled, would seem to be somewhat shaken at least.

The costs in each particular case must be paid out of the moneys applicable to the payment of the debt, and the interest thereon claimed.

The costs incurred by forming and trying issues, including charges made by printers for advertising rules, and the charge of a commissioner for reporting the facts, &c., must be apportioned amongst the several creditors, and they are to contribute to the payment thereof in proportion.

In the matter of the appropriation of the moneys arising from a judicial sale of the real estate of John H. Cowden.

Appeal by the Philadelphia Bank; also, by the grandchildren, great-grandchildren, and legatees under the will of John Cowden, deceased, by William Donaldson, and Anna Maria, his wife; by the President, Directors, and Company of the Bank of the United States; by the President, Directors, and Company of the Bank of Pennsylvania; by the West Branch Bank; by Samuel W. Black, assignee in bankruptcy of John H. Cowden; and by R. & J. Elliot; from the final decree of the Court of Common Pleas of Union county, distributing the proceeds of sale of the real estate of John H. Cowden.

The facts of this case, as well as the points made in this court, and the grounds upon which they were supported, are so distinctly and fully stated by his honour, who delivered the opinion of the court, that a further statement of them here would be superfluous and unnecessarily swell this report.

Errors assigned on part of the Bank of the United States.

1st. The court erred in refusing to hear the evidence offered on the distribution, and in refusing to direct an issue to try the facts alleged, which were disputed by the Manufacturers and Mechanics' Bank.

2d. The court erred in deciding that the United States Bank judgment was not entitled to be paid out of the money in court.

On part of the Bank of Pennsylvania and West Branch Bank at Williamsport, &c. :

1st. The court erred in deciding that the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, had the first lien on the mill property, sold by the sheriff in Lycoming county.

2d. The court erred in not directing the costs of the several issues to be paid out of the moneys in court.

On part of R. & J. Elliot :

The court erred in deciding that their lien was not entitled to any part of the money in court.

On part of Samuel W. Black, assignee in bankruptcy of John H. Cowden :

1st. The court erred in deciding that said assignee was not entitled to the money in court, or any part of it.

2d. The court erred in refusing to direct an issue.

3d. That the sales by the sheriff of the real estate of John H. Cowden, in Lycoming county, are void ; but if it should be decided by the court that those sales are valid, then the court below erred in not decreeing that the proceeds of said sales be paid over to the assignee in bankruptcy of said Cowden.

By the legatees, grandchildren, and great-grandchildren, and William Donaldson and Maria his wife.

The court erred in deciding that the said legatees were not entitled to any portion of the said fund.

*Jordan* and *Hepburn*, for Daniel Brautigam, a creditor of John Cowden, deceased, and the legatees under the will of said deceased.

*Greenough*, for the Philadelphia Bank.

*Pleasants* and *Bellas*, for the Manufacturers and Mechanics' Bank.

*Maynard*, for the Bank of the United States, for Ellis Lewis, now for the Bank of Pennsylvania, and the West Branch Bank, at Williamsport, for Ellis Lewis.

*Miller*, for Samuel W. Black, assignee in bankruptcy of J. H. Cowden.

[The Reporter regrets, that the limits of a report would not warrant him in publishing the able arguments of the counsel in this case. The length of the arguments, which could not be condensed without doing injustice to the learned gentlemen, and which were kindly furnished at the request of the Reporter who was necessarily absent, alone precludes their insertion here.]

The opinion of the court was delivered by KENNEDY, J.

John H. Cowden became invested with a large and valuable real, as also considerable personal estate, under the last will and testament of his late father, John Cowden, subject, however, to the payment of the testator's debts, which do not appear to have been great in amount, and various *legacies* given by him to his daughters, (one of which, to Elizabeth, was an annuity of two hundred dollars during her life,) and to his grandchildren and great-grandchildren respectively. The

z 2

legacies given to his grandchildren and great-grandchildren, not previously provided for, were made payable upon their arriving at full age, or getting married.

John H. Cowden bécame thus invested with all the real estate sold by the sheriff, under judicial process against him, excepting a tract of land lying in Union county, which he purchased with money received from his father's estate, and was sold by the sheriff for $722 25. The larger and most valuable part of the estate derived from the father, and sold by the sheriff, was situate in Northumberland county, and the residue thereof in Lycoming county. The legacies given by the will were not only made a charge upon the whole estate, but the payment of them by John H. Cowden was annexed as a condition to the devise of the estate to him; $3484 24 of which had become payable at the time of the sheriff's sale, and the residue, amounting to $7000, had not become payable, and the terms of their becoming payable rendered uncertain, because given to grandchildren and great-grandchildren, all minors at the time, to be paid upon their respectively arriving at full age or getting married, neither of which events had occurred at the time of the sheriff's sale. There was a debt also of $1036 52 coming to a Daniel Brautigam, a creditor of the testator, which was the first charge upon the estate; and these appear to be all the charges against the estate created by the testator. The first charge created by John H. Cowden, after he became the owner of the estate, was a mortgage, dated the 26th of March, 1841, and recorded in Northumberland county, the 7th of June, 1841, given by him upon a part of the estate situate in that county, to the Philadelphia Bank, to secure the payment of a debt of $34,742 24, which appeared to have been reduced afterwards, on the 6th of November, 1841, to $31,430 40. This portion of the estate, however, only sold for $24,725, from which $160 60 costs, which had accrued thereon, are to be deducted, leaving only $24,564 40 to be applied towards payment of the debt.

The next encumbrance in point of time, created by John H. Cowden upon the estate lying in Northumberland county, was a judgment entered, by warrant of attorney against him, in the Court of Common Pleas of that county, in favour of the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, the 17th day of June, 1841, for $25,000, upon which a payment of $9000 was credited the 8th of October, 1841, and a judgment entered also for the same in the Court of Common Pleas of Lycoming county, on the 15th of January, 1842. But the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, previously to this, on the 24th day of April, 1841, obtained, in the name of James

Hunt, for their use, a deed of conveyance for three tracts of land, with a grist-mill and other improvements thereon, lying in Lycoming county, which deed, though absolute on its face, yet was in reality made a mortgage by a separate instrument of defeasance, executed at the same time. It was given to secure to the said Manufacturers and Mechanics' Bank the payment of a note, drawn by John G. Boyd, dated April 16, 1841, and endorsed by John H. Cowden, to the bank, for $30,000, payable six months after the date thereof. The absolute deed, executed by John H. Cowden, was recorded on the 21st day of October, 1841, but the defeasance was never recorded.

The next encumbrance, created by John H. Cowden, upon the estate lying in Lycoming county, was a judgment given by him to the Bank of the United States, in the Court of Common Pleas of that county, on the 10th day of May, 1841, as the endorser of William Willard, for $2591 38. But it was alleged, that this judgment was released and discharged, by the plaintiffs therein having given time to William Willard, the principal, for the payment of the debt intended to be secured by it, and that this court had so decided in The Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, v. The Pennsylvania Bank, 7 Watts & Serg. 335. To repel this allegation, the party claiming the benefit of the judgment against John H. Cowden, as the endorser of William Willard, offered to show, that that point did not, and could not have arisen in the case of The Manufacturers and Mechanics' Bank v. The Pennsylvania Bank, which was merely an issue, joined by the agreement of the parties thereto, to determine whether the said Manufacturers and Mechanics' Bank had a right to receive the moneys arising from the sale of the real estate of John H. Cowden lying in Lycoming county, and not to settle, whether the plaintiffs in the judgment against John H. Cowden, as such endorser, was entitled to receive any portion thereof. And offered further to prove, that John H. Cowden not only consented to the giving of the time alleged, but that he had himself, by an agreement entered into with William Willard, become the principal debtor, and, in consideration of having received the amount of the judgment from Willard, had bound himself to William Willard to pay it. This evidence, however, was all objected to; and the court below, conceiving that this court had actually decided, in the case of " The Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, v. The Pennsylvania Bank," that the judgment, as against John H. Cowden and his property, had been released and discharged, refused to admit the evidence; to which opinion of the court, the counsel of the party claiming the benefit of the judgment

excepted. The Bank of Pennsylvania next took a deed of convey-ance, in the nature of a mortgage, from John H. Cowden, executed on the 4th day of June, 1841, in the name of Joseph Trotter, their cashier, upon all the real estate of John H. Cowden lying in Lycoming county, to secure the payment of a debt of $25,000, owing by him to the Pennsylvania Bank. This deed of mortgage was recorded the 8th day of November, 1841 ; and the bank, at the time, and before the taking of it, were informed by John H. Cowden of his having pre-viously executed the deed of conveyance, on the 16th day of April, 1841, to James Hunt, for the use of the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, to secure them in the payment of the $30,000, for which he had become bound to them, as above stated. The next encumbrance, which covered the last of John H. Cowden's real estate, was a judgment obtained against him by the West Branch Bank, at Williamsport, in the Court of Common Pleas of Lycoming county, on the 13th day of January, 1842, for $15,494, and entered also in the Court of Common Pleas of Union county, on the 22d day of the same month, upon which the real estate of John H. Cowden, situate in that county, was taken in execution, and sold for $772 25, which sum of money is ad-mitted to be applicable to the judgment under which the sale was made. On the 6th day of November, 1841, the Philadelphia Bank obtained a judgment against John H. Cowden in the Court of Com-mon Pleas of Northumberland county, for $31,430 40, and transferred the same also to the Court of Common Pleas of Lycoming county, on the 9th day of the same month. After this, J. & A. Elliot obtained a judgment against John H. Cowden and others, on the 15th day of November, 1841, in the Common Pleas of Lycoming county, for $1579 15; and on the 22d day of December, 1842, John H. Cowden presented his petition for the benefit of the bankrupt law ; on the 23d day of January, 1843, he was declared a bankrupt ; Daniel W. Black appointed his assignee; and on the 11th day of July, in the same year, he obtained his discharge and certificate. In the court below, Mr. Greenough, for the Philadelphia Bank, alleged that since the trial of the issues at the last preceding term of the court in Union county, the Bank of Pennsylvania had obtained full satisfaction of the debt secured by the mortgage of the 4th of June, 1841, from John H. Cow-den to Joseph Trotter, in trust for her, out of the claims transferred and delivered to said bank as collateral security for said debt, and out of the property of John H. Cowden, not included in the mortgage deed upon which the Manufacturers and Mechanics' Bank then claimed the money. The truth of this allegation the Manufacturers and Mechanics'

Bank denied, and said, even if true, it amounted to nothing, as it could not defeat the right of the Manufacturers and Mechanics' Bank after it had attached and become vested. Mr. Greenough then asked until the next court to prove the truth of what he alleged, which request the court below refused to grant; and, he not having any proof at hand, none was offered.

Now, according to the statement thus given of the case, it is plain that the debt coming to Daniel Brautigam, and the legacies, so far as they had become payable, or their actual value in cash capable of being ascertained, at the time of sale, seeing they were the first liens upon the whole estate, lying within the counties of Northumberland and Lycoming, which was sold, and the proceeds of the sale being greatly more than sufficient to pay them, must, of course, be fully paid out of the same. But, in regard to the other claims upon the proceeds of the sales, whose liens were posterior in time, and of different consecutive dates to each other, and being taken separately were confined to certain portions only of the estate sold in Northumberland and Lycoming counties, but taken collectively covered the whole thereof; some difficulty has arisen as to *marshalling* the proceeds as between them. The first and great question which presents itself here is, can the moneys, arising from the sales, be marshalled or appropriated in such a way as to throw the debt of Brautigam and the legacies, which had become payable at the time of the sales, upon those funds which may be supposed to have been raised from such parts of the estate as became last encumbered, so that the encumbrancers, as between themselves, shall be charged in the reverse order of the time of the encumbrances obtained by them? that is to say, the last encumbrances shall give way in an inverted order, to all prior, until the latter shall be paid, so far as the funds may be adequate to that end. Or, in other words, the question presented is, shall not the last purchasers or encumbrancers, when the estate, by a sale thereof, is converted into money, take only as far as they may without disturbing the rights of the prior encumbrancers or purchasers, who, being prior in point of time, may therefore be said to have a superiority of rights; giving, for instance, the Philadelphia Bank, which appears to have had the earliest lien upon a certain portion of the estate in Northumberland county, the whole amount of the money arising from the sale thereof, after deducting the costs of the sale, it not being sufficient to pay off their debts.

The general principle undoubtedly is, that if one party has a lien on, or interest in, two funds for a debt, and another party has a lien on, or interest in, one only of the funds for another debt; the *latter* has a *right in equity to compel the former* to resort to the other fund, in the

first instance for satisfaction, (if that course is necessary for the satisfaction of the claims of both parties,) whenever it will not trench upon the rights, or operate to the prejudice of the party entitled to the double fund. 1 Story's Equity, sect. 633, and the cases there referred to. Accordingly, if A. has a mortgage upon two different estates for the same debt, and B. has a mortgage upon one only of the estates for another debt, B. has a right to throw A., in the first instance, for satisfaction upon the security, which he, B., cannot touch; at least, when it will not prejudice A.'s rights, or improperly control his remedies. 1 Story's Equity, sect. 633; Lanoy v. Duke of Athol, 2 Atk. 446; Aldrich v. Cooper, 8 Ves. 388, 395; Cheesborough v. Millard, 1 Johns. Ch. Rep. 413. The same principle is alike applicable to one judgment creditor, who has a right to go upon two funds, and another judgment creditor, who has a right upon one of them only, both belonging to the same debtor. The former may be compelled to apply first to the fund, which cannot be reached by the second judgment; so that both judgments may be satisfied. Dorr v. Shaw, 4 Johns. Ch. Rep. 17; Story's Equity, sect. 634. The question which arises in this case is discussed by Chancellor Kent, in Clowes v. Dickinson, 5 Johns. Ch. Rep. 440, where he says, "If there be several purchasers in *succession*, at *different* times, I apprehend, that in that case there is no equality, and no contribution as between purchasers. · Thus, for instance, if there be a judgment against a person owning, at the time, three acres of land, and he sells one acre to A., the remaining two acres are first chargeable in equity with the payment of the judgment debt, as we have already seen, and that, too, whether the land be in the hands of the debtor himself or of his heirs. If he sells another acre to B., the remaining acre is then chargeable, in the first instance, with the debt as against B., as well as against A., and if it should prove insufficient, then the acre sold to B. ought to supply the deficiency, in preference to the acre sold to A.; because when B. purchased he took his land charged with the debt in the hands of the debtor, in preference to the land already sold to A. In this respect we may say of him, as is said of the heirs, he sits in the seat of his grantor, and must take the land with all its equitable burdens; it cannot be in the power of the debtor, by the act of assigning or selling his remaining land, to throw the burden of the judgment, or a rateable part of it, back upon A. It is to be observed, that the debt in this case is the personal obligation of the debtor, and that the charge on the land is only by way of security; the case is not analogous to a rent charge, which grows out of the land itself, and every purchaser of distinct parcels of a tract of land, charged with the rent, takes it with a proportionable part of the charge. The

owners of the land, in that case, all stand equal, and if the whole rent be levied upon one, he shall be eased in equity, by a contribution from the rest of the purchasers, because of the equality of right between them." And the Chancellor then adds, "The case of Gill v. Lyon, 1 Johns. Ch. Rep. 447, was decided upon the principle here laid down." But Mr. Justice Story (2 Story's Equity, sect. 1233) seems to question the correctness of this doctrine. After stating, that the general rule now acted upon by courts of equity is, that where there is a lien upon different parcels of land for the payment of the same debt, and some of those lands still belong to the person who, in equity and justice, owes or ought to pay the debt, and other parcels of land have been transferred by him to third persons, his part of the land, as between himself and them, shall be primarily chargeable with the debt; which would seem to be highly reasonable, as to the original encumbrancer; he then observes, "But it has been further held, that, if he has sold or transferred different parcels of the land at different times to different persons, as encumbrancers or purchasers, there, as between themselves, they are to be charged in the reverse order of time of the transfers to them; that is to say, the parts last sold are to be first charged to their full value; and so backwards, until the debt is fully paid; for it is said, the last purchasers are to take only as far as they may, without disturbing the rights of the prior encumbrancers or purchasers, who, being prior in point of time, have a superiority of right." "But there seems great reason," as he is pleased to add, "to doubt, whether this last position is maintainable upon principle; for, as between the subsequent purchasers or encumbrancers, each trusting to his own security upon the separate estate mortgaged to him, it is difficult to perceive, that either has, in consequence thereof, any superiority of right or equity over the other; on the contrary, there seems strong ground to contend, that the original encumbrance or lien ought to be borne rateably between them, according to the relative values of the estates. And so the doctrine has been asserted in the most recent English cases on the subject." I have looked into the cases referred to by Mr. Justice Story, as supporting the doctrine mentioned by him in England, and beg leave to say, though with great deference, that Barnes v. Racster, 1 Younge & Coll. 401, is the only one among them which seems to have a bearing that way; and even there the Vice-Chancellor, by whom the case was determined, says, that he does not mean to decide what would have been the rights of the second and third mortgagees, had the first mortgagee included in his first mortgage the property mortgaged to the third mortgagee, which was not included in the mortgage of the second mortgagee. The mortgage of the first mortgagee in-

cluded the property alone in the mortgage of the second mortgagee ; but he took a second mortgage, upon making a further advancement to the mortgagor subsequent to the date of the mortgage of the second mortgagee, including the property in his third mortgage and that a er- wards mortgaged to the third mortgagee, securing to him the payment of his original as well as his second advancement.   But still, I am willing to confess, that the reasoning of the Vice-Chancellor would seem to support the doctrine, which Mr. Justice Story speaks of as being asserted by the recent English cases.   But the Vice-Chancellor speaks on the subject as if the right of the party claiming to have the assets or securities marshalled, depended, at least in some degree, upon a contract made with him for that purpose ; but having no such contract with the debtor, he cannot preclude the debtor from dealing with his property as his necessities may require.   Assets, however, or securities are seldom, if ever, marshalled on the ground of contract, but upon mere principles of equity and general justice, as is said by Mr. Justice Story himself.   Vide 2 Story's Equity, sect. 1234.   Several instances of marshalling are given by Lord Eldon in Aldrich v. Cooper, 8 Ves. 395, 396, all resting exclusively upon the principle of equity, which will throw the creditor, who has two funds, upon that which can be effected by him only ; so as to enable the creditor, who has a claim upon one only of the funds, to have his claim paid also.   The same Lord Chancellor, in the same case, 8 Ves. 388, in speaking of the case of Robinson v. Tonge, mentioned in Cox's note, 1 P. Williams, 680, 5th edit., says, " I was surprised at the case, when it was stated : suppose there was no freehold estate, but there was copyhold estate, which the owner had subjected to a mortgage and died.   It is clear, the mort- gagee having two funds, might, if he pleased, resort to the copyhold estate.   But would this court compel him to resort to it ?   If so, the court marshals by the necessary consequence of its act.   If the court would not compel him, is it not clear, that it is purely matter of *his will*, whether the simple contract creditor shall be *paid* or *not* ?   That at least *contradicts all the authorities*, that if a party has two funds, (not applying to assets particularly,) a person having an interest in one only has a *right* in *equity* to *compel* the former to resort to the other, if that is necessary for the satisfaction of both."   Some stress, in favour of the new doctrine, seems to be laid on the fact, that Lord Eldon, in Aldrich v. Cooper, and also Lord Hardwicke, in Lanoy v. Duke of Athol, in speaking of the *right*, and the application of the rule of mar- shalling assets or securities, have confined themselves to cases where there are but two creditors, the first of whom has two funds, and the second, one only of the two funds ; and that they have been careful in

giving instances of its application, not to extend it to the case where there is a third person, who has become subsequently a purchaser or encumbrancer of some portion of the estate covered by the first lien. It is a sufficient answer to this argument, that no such case was presented to either of those distinguished chancellors at the time; nor was it in the slightest degree requisite, that such should be mentioned or noticed in any way by either of them. But it does seem to be difficult, if not almost impossible, to conceive upon what principle of reason or sound sense the second creditor is to be divested or deprived of his *right* to have the securities marshalled so as to have the whole of his debt paid after the coming in of the third person, the same as he had a right previously thereto. Is it possible, if he has a *right* to *compel* the payment of his debt, both as against the first encumbrancer and the debtor before the third intervenes, that he can be deprived of such right without his consent or laches on his part, by the act of the debtor in conjunction with such third person? This would be a most singular anomaly, to say the least of it; every *right*, with which a man is invested, is regarded, in law, as of some value; but if he can be deprived of it against his will, by the act of another at pleasure, it is manifest, that it is perfectly worthless, and not entitled to the denomination of a *right;* as it has been held to be by courts and judges, as well as all legal writers on the subject. I must confess that it appears to me, that the reasoning of Chancellor Kent, as recited above, is not only satisfactory but unanswerable; and the doctrine as laid down by him has been approved, and followed by a train of decisions in the state of New York, which has settled it there beyond all controversy. James *v.* Hubbard, 1 Paige, Rep. 228; Governeur *v.* Lynch, 2 Paige, Rep. 182; Patty *v.* Pease, 8 Paige, Rep. 277; Gill *v.* Lyon and others, 1 Johns. Ch. Rep. 447. But the very question was raised and settled by this court in 1823, in Naylor *v.* Stanley, 10 Serg. & Rawle, 450. That case was ruled and decided expressly on the ground, that the purchaser of the second tract, bound by a judgment against the vendor, which was taken in execution and sold to satisfy the judgment, had no right of contribution as against the prior purchaser of the first tract, which was bound also by the same judgment. The action was assumpsit by the second purchaser against the first, to recover contribution: and Mr. Justice Duncan, who delivered the opinion of the court, first observing, that "whether assumpsit would *lie* to recover contribution, it was unnecessary to decide; because," as he says, "there is an objection to the right itself, in every mode and form at law and in equity. For this is not a case of contribution. No contribution *lies* between these parties. The plaintiff below could neither by audita querela,

2 A

scire facias, or bill in equity, compel a contribution. I was struck with the reasons of the counsel of the plaintiffs in error, though they produced no adjudged cases; for why should the second purchaser come in as the first. He can stand in no better situation than Vanlear, (the vendor.) He took it subject to all the encumbrances against Vanlear. He was bound to look to the state in which Vanlear, and in which Naylor (the first purchaser) stood. How then did they stand? Excluding the property sold to Naylor, there was land enough held by Vanlear to satisfy this judgment." I would remark here in passing, that Mr. Justice Duncan, by saying "I was struck with the reasons of the plaintiffs in error," &c., shows that Mr. Justice Huston, who was not a member of the court at the time, must have been mistaken in the Presbyterian Corporation *v.* Wallace and others, 3 Rawle, 165, where he says "this point had not been argued." So that it was, as appears by the report of the case, not only argued, but made the turning point of the cause by the court in deciding it. It was decided by the court *unanimously*, without a dissenting opinion. But it may perhaps be said, that the authority of this case has been impugned by the decisions of this court subsequently, in the cases of Donley *v.* Hays, 17 Serg. & Rawle, 400, and the Presbyterian Corporation *v.* Wallace, 3 Rawle, 169. I would remark, first, that in both these cases, the judges of the court differed in opinion, and that each case was decided only by a bare majority: the Chief Justice, and Mr. Justice Rogers dissenting from the decisions made by the majority. In regard to the first of these two cases, I may remark further, that it is not directly in point; though I confess, that I think the minority of the court were right, as is most clearly shown by the Chief Justice in his opinion given in the report of the case. The question there was, whether a mortgagee, having taken a mortgage upon real estate of the debtor, to secure the payment of seven bonds, payable at different times by the mortgagor to him, the four first of which had been assigned by him to four different persons, at different dates, for value received, could upon a sale of the mortgaged premises being made, for a sum of money insufficient to pay all the bonds, claim a full pro rata dividend of the proceeds of the sale, with the persons to whom he had assigned the first four bonds, towards payment of the three remaining bonds still held by him that became last payable. And, by a majority of the court, it was held that he could.

I must confess, that I am wholly unable to discover any principle of either law or equity, upon which this decision can be maintained. For without a promise of some sort, either express or implied, it would be difficult, if not impossible, to sustain the claim upon legal princi-

ples. It is not pretended there was any express promise made in favour of the plaintiff in the court below; and as to an implied promise, if any at all can be said to have grown out of the transaction, it would seem to have been in favour of the assignees of the bonds; that they should be first paid before the assignor should receive any thing on the bonds still retained by him; and especially so, seeing he had received full value of the respective assignees for them. I cannot believe it is a case which will be followed; for it might as well be adjudged, that if the owner of three tracts of land, which he had previously mortgaged, sells one of them for its full value to A., the second to B., also for its full value, retaining the third to himself, is compelled to pay the mortgage debt, or the tract retained by him is taken by legal process and sold for it, that he shall have contribution from A. and B. to whom he sold. But this, in such case, would be contrary to every principle that has been established, or laid down on the subject. The other of these two cases, the Presbyterian Corporation v. Wallace and others, does, no doubt, embrace the question; that is, whether the purchasers of different tracts of land at different times, subject to the payment of a mortgage upon the whole, shall contribute pro rata to the payment of the mortgage, according to the relative values of their respective tracts; or whether the last purchaser shall not contribute, in the first place, to the amount of the whole value of his tract, if requisite, and if found insufficient to pay the whole debt, then the preceding purchasers to contribute according to the inverse order of the time in which they purchased, until the mortgage debt shall either be paid, or all the mortgaged lands exhausted. A majority of the court decided that each purchaser, or that the land purchased by him, was liable to contribute pro rata towards the payment of the mortgage debt according to its relative value. This case was decided at the first term after I came on the bench of this court. The question was new to me, and one to which I had never had occasion to turn my particular attention. I had the misfortune to join the majority in deciding the cause, and, as I am now most thoroughly convinced, erroneously. And if I can only correct the error for the time to come, which I then committed, it will give me sincere pleasure to do so. Indeed, it will not only be a satisfaction, but a great relief to me. As the judges of the court were divided three against two, it may be said, in effect, to be the decision only of a single judge, overruling the decision of the whole court in Naylor v. Stanley. Under such circumstances, the court ought not, upon the like question being brought before them afterwards, in another case, to consider themselves bound by the decision of a court so divided, unless convinced that it was right upon principle, or at

least upon authority. I am not aware that the decision in the Presbyterian Corporation *v.* Wallace has been applied to, or followed in any subsequent case, and, as it appears to me, most likely never will. Naylor *v.* Stanley seems still to maintain its full sway, and to govern the judicial mind.

Accordingly, Mr. Justice Sergeant, in the Executors of Taylor *v.* Maris, 5 Rawle, 56, in delivering the opinion of this court, says, "It is in truth no more than perfecting a partial equity already existing, by which, if the debtor sells a portion of his land bound by a judgment, the remaining land in the hands of the debtor, or his heirs or *vendee*, must first be proceeded against by the judgment creditor, before the land of the prior purchaser can be levied on," for which he cites Naylor *v.* Stanley, 10 Serg. & Rawle, 450. First, then, as to the legacies which had not become payable, at the time of the sheriff's sale, the cash value whereof was not capable of being ascertained; we think the estate must be considered as having been sold subject to the payment of them, so that they are not to be paid out of the moneys arising from the sale. But as to the debt of the testator coming to Daniel Brautegam, and the legacies which had become payable, and their cash value capable of being accurately ascertained, they must be paid in full, but paid out of the moneys that otherwise would be applicable to the payment of the last encumbrances or liens in point of time. The $24,725 arising from that part of the estate lying in Northumberland county, mortgaged to the Philadelphia Bank, must be appropriated entirely to the payment of their debt, and the costs of the suit accrued on their mortgage, which are stated to be $160 .60. Next, the $11,058, and the $109 57 interest thereon, received by the sheriff, making $11,167 57 in all, moneys arising from the sale of that part of the estate lying in Northumberland county not included in the mortgage given to the Philadelphia Bank, must be appropriated towards the payment of the judgment entered on the 17th day of June, 1841, against John H. Cowden, in favour of the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, for $25,000.

Now we come to the appropriation of the moneys arising from the sale of that portion of the estate which was situate in Lycoming county. The first lien or encumbrance upon it, was the judment entered on the 10th day of May, 1841, in the Court of Common Pleas of that county, in favour of the United States Bank, for the use of the West Branch Bank, for $2591 38, against John H. Cowden, as the endorser of William Willard. This judgment continued also to be a lien at the time of the sale, unless released by the plaintiffs in it, by their giving time to William Willard, the principal, for the payment of the debt.

That time was given to Willard for this purpose would seem to be so ; but then, if it were given by the consent of John H. Cowden, or if John H. Cowden had actually received the amount of the judgment, and in consideration thereof had undertaken to pay it, as would seem to be the case, the giving of time to William Willard would not release John H. Cowden, nor his property, from the payment of the judgment.

It is true, that the Chief Justice, in delivering the opinion of the court in the Manufacturers and Mechanics' Bank v. the Pennsylvania Bank, 7 Watts & Serg. 335, discusses the question, whether John H. Cowden had been released from the judgment by the giving of time to William Willard or not, taking it for granted, that it was done without the consent of John H. Cowden ; and that John H. Cowden had in nowise made himself the principal, and, as such, had bound himself to William Willard to pay the judgment.   The case of the Manufacturers and Mechanics' Bank, which was before this court on writ of error, and reported in 7 Watts & Serg. 335, was entered in the court below, of January term, 1844, and numbered 193, and was an action of assumpsit, entered by the agreement of the attorneys of the respective parties, in which the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, were made plaintiffs, and the President, Directors and Company of the Bank of Pennsylvania, the West Branch Bank at Williamsport, and the Bank of the United States were made defendants.   The agreement appears to be dated the 16th day of February, 1844.   It is thereby agreed, that an issue be formed between the parties, and such others as shall take defence, to *try the rights of the said plaintiff* (the Manufacturers and Mechanics' Bank) *to the money arising* from the sale of the real estate of John H. Cowden in Lycoming county.   Afterwards, on the 27th day of May, 1844, R. & J. Elliot, and the Philadelphia Bank respectively, were added as defendants.   Previously, however, to the formation of the issue in No. 193 of January term, 1844, by the agreement of the parties therein, the court below, during the same term, ordered a feigned issue to be formed in an action of assumpsit, No. 109 of January term, 1844, in which the Bank of the United States for the use of Ellis Lewis, Esq., the President, Directors and Company of the Bank of Pennsylvania, and the West Branch Bank at Williamsport, for the use of Ellis Lewis, Esq. were made plaintiffs, and the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, and the Philadelphia Bank, were made defendants.   On the 27th of May, 1844, this feigned issue being made up, and on the trial list in the court below, the defendants insisted upon having it tried be-

fore the issue in No. 193 of January term, 1844. The court, however, directed that the issue in No. 193 should e tried first, and it was accordingly tried; but the issue in No. 109, it would seem, never has been tried. Now, the only judgment, or lien debt, which the Bank of the United States had against the estate of John H. Cowden, was the judgment obtained on the 10th day of May, 1841, in the Court of Common Pleas of Lycoming county, against him as the endorser of William Willard, for $2591 38, with interest thereon from that date. But the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, claimed the money arising from the sale of the real estate of John H. Cowden, under a deed prior to that made on the 24th of April, 1841; and the question involved in the issue of No. 193 of January term, 1844, was not, who was entitled to receive the money, but was the Manufacturers and Mechanics' Bank of the Northern Liberties in the county of Philadelphia, entitled to receive it, as against the defendants in the issue? And the jury, under the direction of the court, that the deed, under which the plaintiffs in the issue claimed, was void, because the instrument of defeasance connected with it was not recorded, gave a verdict against the plaintiffs, (the Manufacturers and Mechanics' Bank,) but found, that the Bank of Pennsylvania, on the 4th of June, 1841, when they took their mortgage in the name of Joseph Trotter, had notice of the pre-existing deed made to the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia. And upon the finding of this *part* alone, the court reversed the judgment of the court below, and gave a judgment for the plaintiffs therein. Though the finding of this *part* might be sufficient to give the plaintiffs a right to receive the money as against the Pennsylvania Bank, can it be regarded as sufficient, not only to prevent the Bank of the United States from receiving any portion of the money on their judgment, but to conclude them for ever from showing, that they have a good right to receive the same, as they offered to do in the court below in this case. If the jury had found, that the United States Bank had given time to William Willard, the principal debtor, to pay the debt, for which the judgment was entered against John H. Cowden, as endorser, without his consent, then, perhaps, the judgment given by this court might have been considered conclusive of the right of the United States Bank to receive the amount of their judgment. But they have found nothing of the kind, nor can any such finding be fairly and necessarily inferred from their verdict. They were sworn or affirmed, merely to try the right of the plaintiffs in the issue to receive the money, and not to decide whether the defendants, or any of them, had a right to receive it, or any part thereof; so that they have found

nothing whatever in regard to the claim of the United States Bank. It does seems to me, that from the form of the issue in No. 193 of January term, 1844, and the finding thereon of the jury, it would be going too far, and doing injustice to the United States Bank, to say that they were now precluded from showing that they had a just right to receive the amount of their judgment. Besides, there are $921 raised from a sale of part of the real estate of John H. Cowden, which was situate in Lycoming county, and not included in the deed or mortgage given by him to the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, to which it is not pretended, that the judgment of this court has given them any right or claim. I would ask, how is this sum to be disposed of? Will it be said, that it has been given to the Bank of Pennsylvania, as the court below have done, or some other of the defendants in the issue, and not to the Bank of the United States, who, if we judge from the record alone, had the first lien upon the estate in Lycoming county after the liens of Brautigam and the legatees? I would therefore say, that if it be made to appear, as no doubt it can, that John H. Cowden assented to the further time that is said to have been given by the United States Bank, or the party having the control of the judgment in their name, or had become, in reality, the principal in it by an agreement with William Willard to pay it, the judgment ought to be paid out of the money arising from the sale of the estate in Lycoming county. If this judgment is to be paid, I would say, that the $921 dollars raised from the sale of the real estate in Lycoming county not included in the mortgage given to the Manufacturers and Mechanics' Bank, ought to be applied towards the payment of it, after deducting the costs incurred by the sale.

Next out of the moneys arising from the sale of the estate in Lycoming county, included in the deed of mortgage to the Manufacturers and Mechanics' Bank, ought to be paid the Brautigam debt, with the costs and interest thereon to the time of the sale, and likewise the legacies, with the costs and interest thereon from the time they each become payable, to the time of sale. The costs of each particular case must be paid out of the moneys applicable to the payment of the debt and interest thereon claimed. As to the costs incurred by forming and trying feigned issues, we do not perceive any reason for changing the direction that the court below gave in regard to them, including the charges made by printers for advertising rules, &c., and the charge of J. B. Anthony, Esq., for making out extracts from the records, &c., amounting in all to $112 47½. The order of the court below, in this respect, was, that this sum should be apportioned among the several creditors of John H. Cowden, and that they respectively should con-

tribute to the payment thereof in proportion to the amount coming to and received by each.   If interest has been made and received on the moneys, or any portion thereof, made by the sheriff's sale, it shall follow and be paid to the party or parties respectively, who shall be entitled under the decree to receive the principal upon which it shall have been made and received. The residue of the moneys arising from the sale of the estate or lands, with the mill and other improvements thereon included in the mortgage given by John H. Cowden, and lying in Lycoming county, after paying the moneys as herein already directed and decreed, shall be paid to the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, towards satisfying their mortgage debt.

If the parties should, as it is most likely they will, agree, without further contest, that John H. Cowden agreed with William Willard to pay the debt owing to the Bank of the United States by Willard, and for which Cowden was bound as endorser, in consideration of having received from Willard what was considered by them at the time a full equivalent for doing so, or assented to the time given to Willard beyond that to which he was entitled by the original agreement; the foregoing direction in regard to the distribution and application of the moneys raised from the sale of the real estate of John H. Cowden may be considered as a final decree in the matter.

I deferred saying, until coming to a close, what I intended in regard to the annuity of $200 becoming payable since the sale, and so hereafter, and the legacies, amounting in all to $7000, which still remain a charge upon the estate or lands sold, in the hands of the purchasers at the sheriff's sale.   The purchasers, or, at least, the lands in their hands, must be considered liable to the payment of the annuity and these legacies, in the reverse order of the other liens thereon to pay which they were sold by the sheriff; that is, the lands lying in Lycoming county, mortgaged to the Manufacturers and Mechanics' Bank of the Northern Liberties, in Philadelphia county, must be first resorted to ; if they prove insufficient, then the land sold in that county for $921 must be looked to next; after which, the lands lying in Northumberland county, not included in the mortgage given to the Philadelphia Bank, must be resorted to ; and lastly, if necessary, though most highly improbable, the lands lying in the same county, mortgaged to the Philadelphia Bank, would have to be made liable to pay whatever deficit there may be, after exhausting all the lands previously mentioned, in the order just stated.   This will only be carrying out the principle, and applying it to the future payment of the legacies still remaining a charge upon the estate, that has been applied to the pay-

ment of those payable out of the proceeds of the sales; and extending to the purchasers of the estate, at the same time, the protection which is generally afforded them, by substituting them to the rights of the lien creditors entitled to - receive the proceeds of the sales of the estate.

Account of sales of the real estate of John H. Cowden :—

First. In Northumberland county.

The property mortgaged to the Philadelphia Bank, sold for $24,725 —costs of suit and sale, $160 60, to be deducted or paid out of same, - - - - - - - - $24,725 00

The property, not included in said mortgage, sold for $11,058, and interest received thereon since, $109 67, costs of suit and sale, $105 22, to be deducted or paid out of same, - - - - - 11,167 57

Secondly. Property in Lycoming county, mortgaged to the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, sold February 6, 1843, for $20,005, costs thereon to be paid out of same, $166 23, - - - - - 20,005 00

Property sold to the Pennsylvania Bank, not included in said mortgage, costs unknown, for - - - 921 00

| | |
|---|---:|
| Amount, | $56,818 57 |
| Thirdly. Property sold in Union county, - - - | 722 25 |
| Aggregate amount, | $57,540 82 |

Appropriation of the same :—

To the Philadelphia Bank, towards paying debt, interest, and the costs, - - - - - - - $24,725 00

To the Manufacturers and Mechanics' Bank of the Northern Liberties, in the county of Philadelphia, towards payment of debt, interest, and costs, - - - 11,167 57

To the United States Bank, for E. Lewis, Esq., in payment of debt, interest, and costs in full; debt, $2591 55; interest from 10th June, 1841, to February 6, 1843, say one year and eight months, $272 11; costs unknown, - - - - - - - - 2,863 66

To the payment of the Brautigam debt, interest, and costs in full, - - - - - - - 1,145 25

To the payment of legacies in full, to Mary Bradford, - 2,454 65

|  | | |
|---|---|---|
| Amount brought over, | $42,356 | 13 |
| To Sarah H. Bradford, $529 59, and to David G. Barnitz and wife, $500,    -    -    -    -    -    - | 1,029 | 59 |
| To the West Branch Bank of Williamsport, the amount of the sale of the property in Union county,    -    - | 722 | 25 |
| To the payment of the costs of the suit of the United States Bank, for E. Lewis, Esq., _v._ John H. Cowden, as endorser of William Willard, when ascertained; and also, towards payment of the debt, interest, and costs in the Manufacturers and Mechanics' Bank of the Northern Liberties, in Philadelphia county, the residue of the moneys arising from the sale of the property mortgaged to the said bank, in Lycoming county, must be applied, -    -    -    -    -    -    - | 13,432 | 85 |

Amount,    $57,540 82